**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FR-WILLIAMSPORT LLC, | ) | |
| Plaintiff, | ) | Civil Action No. |
| v. | ) | |
| BOYD JONES CONSTRUCTION CO., | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff FR-Williamsport LLC ("Williamsport"), by and through its undersigned counsel, files the following Complaint against Boyd Jones Construction Co. ("BJC") and, in support thereof, states as follows:

**NATURE OF THIS CAUSE OF ACTION**

1. This action arises from Defendant's material breaches of a Solar Project Engineering, Procurement and Construction Agreement ("EPCA") dated April 4, 2025, pursuant to which Defendant agreed to design, procure, construct, complete, and deliver a utility-scale solar energy facility located in Franklin County, Pennsylvania (the "Project"). BJC failed to timely execute the Project; failed to adequately staff the Project with qualified personnel; and failed to adequately supervise the work necessary to complete the Project. Indeed, the Project was plagued by BJC's poor project management, insufficient Project implementation, and inability to coordinate effectively between the Owner, subcontractors, and other stakeholders. As a result of BJC's numerous defaults under the EPCA, Williamsport ultimately terminated BJC from the Project. Following termination, BJC refused to comply with its post-termination obligations under

the EPCA, including the prompt assignment of subcontracts and supplier agreements and the provision of Project information necessary for Williamsport to complete the Project. BJC's post-termination breaches of the EPCA are causing further damages to Williamsport. Williamsport now brings this breach of contract claim in order to recover damages resulting from Defendant's failure to perform its obligations under the contract. [1]

## PARTIES

2. Plaintiff, Williamsport, is a Pennsylvania limited liability company with its principal place of business at 2650 Locust St., Ste 100, St. Louis, MO 63103.

3. Williamsport's sole member is BCP Pa 2025 Holdings, LLC, which is a Pennsylvania limited liability company. None of the members of BCP Pa 2025 Holdings, LLC are citizens of Nebraska.

4. Defendant BJC is a Nebraska corporation with its principal place of business at 950 S. 10th St., Suite 100, Omaha NE 68108.

## VENUE AND JURISDICTION

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship amongst the parties and the amount in controversy exceeds $75,000.

6. Venue is proper in this Court under 28 U.S.C.§ 1931(b)(2) because, among other things, a substantial part of the events and omissions giving rise to the claim occurred in, and the Project at issues is situated in, Franklin County, Pennsylvania, which is within the Middle District of Pennsylvania.

[1] The EPCA is subject to a confidentiality provision. As a result, the EPCA will be filed as Ex. A with the Court upon the entry of an appropriate confidentiality order.

7. Additionally, under the EPCA, the parties agreed that "any suit, action or other legal proceeding by or against any Party (or its Affiliates or designees) with respect to or arising out of this Agreement shall be brought in the federal courts of the United States or the Courts of the Commonwealth of Pennsylvania." Ex. A § 16.4 (entitled Governing Law; Submission to Jurisdiction; Venue).

8. All conditions precedent to bringing this action have occurred, have been satisfied, or have been waived.

## FACTUAL BACKGROUND

### A. The Parties Entered into a Fixed-Price Turnkey EPCA.

9. Williamsport is the owner and developer of the Project, known as the Williamsport Solar Project, a utility-scale solar energy facility located in Franklin County, Pennsylvania.

10. Prior to entering into the EPCA, BJC held itself out as a contractor with expertise, personnel, licensing, and resources necessary to design, engineer, procure, construct, commission, and deliver a complete utility-scale solar facility.

11. On April 4, 2025, Williamsport and BJC entered into the Solar Project EPCA. *See* Ex. A.[2]

12. The EPCA is a fixed-price turnkey construction contract under which BJC agreed to design, procure, construct, complete, test, commission and deliver the Project for a fixed contract price of $19,761,912. Ex. A §§ 2.1, 5.1.

13. Under the EPCA, BJC agreed, on a fixed-price turnkey basis, to "diligently, duly and properly perform and complete the Work" and to "achieve the Key Project Milestones by the

---

[2] All capitalized terms stated herein shall have the same meaning as set forth in the EPCA.

Key Dates, Mechanical Completion by the Guaranteed Mechanical Completion Date, and Substantial Completion by the Guaranteed Substantial Completion Date." Ex. A § 2.1.

14. The EPCA further required BJC to provide all labor, equipment, materials, management, supervision, scheduling, reporting, procurement, commissioning, testing, and other services necessary to complete the Project. Ex. A. §§ 2.1, 2.11, 4.1.

15. The EPCA established a strict project schedule, including a Guaranteed Mechanical Completion Date of November 27, 2025 and a Guaranteed Substantial Completion Date of December 31, 2025. Ex. A §§ 4.1(b), 4.3, 4.5.

16. The parties subsequently executed Change Order No. 1, which, among other things, modified the Guaranteed Mechanical Completion Date to December 1, 2025 and the Guaranteed Substantial Completion Date to December 22, 2025.

**B. BJC Immediately Began Falling Behind Schedule.**

17. Almost immediately after execution of the EPCA, BJC began missing critical project milestones and falling behind the contractual schedule.

18. BJC failed to provide full Mechanical and structural design deliverables that were necessary to maintain progress toward Mechanical Completion and Substantial Completion.

19. Williamsport's records, which include BJC's own contemporaneous progress reports, reflect that the Project was substantially behind schedule from the beginning of Work, with delays affecting multiple critical-path activities necessary to achieve Mechanical Completion and Substantial Completion.

20. Those delays included, among other things, delayed design and engineering deliverables, delayed procurement activities, delayed mobilization, inadequate staffing, frequent

and unacceptable Project team turnover, and the failure to timely advance critical construction activities necessary for Project completion.

21. For example, BJC failed to provide a full and comprehensive mechanical and structural design for the Project at any time.

22. NBJC also did not deliver a timely supervisory control and data acquisition ("SCADA") design for the Project.

23. As a result of these failures, additional engineering rework was required during the Project, causing additional delays and added cost.

24. By August 2025, BJC's progress reporting reflected substantial delays across major Project workstreams despite the Project being in its early stages and despite BJC's continuing obligations to prosecute the Work in accordance with the Project Schedule.

25. Those delays were not isolated events and instead reflect a continuing pattern of deficient project management, insufficient staffing, missed milestones, and failure to perform the Work in accordance with the EPCA.

26. BJC's poor management, implementation of improper means and methods, and inability to coordinate and communicate effectively between the Owner, subcontractors, and other stakeholders materially impaired completion of the project.

**C. BJC Failed to Achieve Mechanical or Substantial Completion.**

27. The EPCA obligated BJC to achieve Mechanical Completion by the Guaranteed Mechanical Completion date of December 1, 2025. Ex. A §§ 4.1(b), 4.3.

28. However, BCJ failed to achieve Mechanical Completion by the Guaranteed Mechanical Completion date.

29. After failing to achieve Mechanical Completion by the Guaranteed Mechanical Completion Date, BJC later attempted to assert that Mechanical Completion had been achieved.

30. On or about March 23, 2026, BJC submitted a Mechanical Completion Certificate asserting that the Project satisfied the requirements for Mechanical Completion under the EPCA.

31. On March 25, 2026 and March 31, 2026, Williamsport timely notified BJC that the Project had not achieved Mechanical Completion and identified numerous deficiencies preventing Mechanical Completion, including incomplete construction work, outstanding commissioning items, unresolved permitting-related matters, incomplete documentation, and other deficiencies that independently and collectively precluded Mechanical Completion under the EPCA.

32. Williamsport subsequently provided additional written communications on April 3, 2026 and April 7, 2026 identifying further outstanding deficiencies and explaining why the contractual requirements for Mechanical Completion had not been satisfied.

33. Despite those communications and opportunities to cure, BJC failed to remedy the identified deficiencies, failed to satisfy the requirements for Mechanical Completion, and failed to provide any credible path toward Project completion.

34. As a result of BJC's failure to timely achieve Mechanical Completion and Substantial Completion, Williamsport exercised its contractual rights under Sections 5.4(c), 5.8, and 12.4(g) of the EPCA to dispute BJC's entitlement to payment, offset amounts owed by BJC, and withhold amounts otherwise payable under the Agreement.

35. On April 30, 2026, Williamsport issued a formal Notice of Withholding advising BJC that Delay Liquidated Damages arising from BJC's delays had reached the contractual cap and that Williamsport intended to withhold payment applications then pending. A true and correct copy of the Notice of Withholding is attached hereto as Exhibit B.

36. As of the date of Williamsport's June 8, 2026 Notice of Continuing Default, BJC had not achieved either Mechanical Completion or Substantial Completion, and the Project remained approximately 186 days beyond the Guaranteed Mechanical Completion Date and approximately 156 days beyond the Guaranteed Substantial Completion Date. A true and correct copy of the Notice of Continuing Default is attached hereto as Exhibit C.

37. At the time of termination on July 7, 2026, neither Mechanical nor Substantial Completion had been achieved. A true and correct copy of the Notice of Termination is attached hereto as Exhibit D.

38. At the time of termination and transition of the Project, substantial portions of the Work remained incomplete, including construction, testing, commissioning, documentation, closeout, and other activities required to achieve Mechanical Completion and Substantial Completion under the EPCA.

39. Further, at the time of termination and transition of the Project, Owner discovered that portions of the Work, including but not limited to underground cable installation that was non-compliant with the National Electrical Code.

40. As a direct result of BJC's failure to timely achieve Mechanical Completion and Substantial Completion, Williamsport incurred Delay Liquidated Damages, Completion Costs, and other damages recoverable under the EPCA.

**D. BJC Failed to Provide Sufficient Labor and Resources.**

41. The EPCA required BJC to "furnish sufficient labor forces" and work such hours as necessary to complete the Project in compliance with the Project Schedule and Guaranteed Completion dates. Ex. A, § 4.1(c).

42. BJC failed to provide sufficient workforce and resources to prosecute and complete the Work. *See* Ex. A, §§ 4.1(c), 2.1.

43. Despite representing that it possessed the personnel, expertise, and resources necessary to complete the Project, BJC failed to adequately staff the Project and failed to maintain the workforce necessary to recover from schedule delays and to complete the Work.

44. As the Project fell further behind schedule, BJC materially reduced workforce levels and Project resources rather than increasing resources to facilitate completion of the Work.

45. BJC also experienced personnel turnover and staffing deficiencies that further impaired its ability to supervise, manage, and complete the Work.

46. Indeed, numerous key BJC personnel at all levels—executive, project management, and construction management—departed BJC during the course of the Project leading to continuity and quality issues, as well as requiring additional time and cost to bring replacement personnel up to speed.

47. Williamsport informed BJC of these deficiencies on multiple occasions, including through comments on monthly reports and a non-conformance notice regarding the Project's stormwater pollution prevention plan ("SWPPP") reporting deficiencies.

48. Additionally, on November 24, 2025, Williamsport sent BJC a formal notice in response to these deficiencies, including, but not limited to the personnel deficiencies, requesting a formal Remedial Action Plan, which explicitly requested Resource Allocation and Staffing details in sections 2 and 3 of the request.

49. Further, BJC failed to ever completely fill all the roles defined in Exhibit X.7. of the Agreement.

50. By February 2026, Williamsport had identified the absence of a dedicated safety manager on an energized Project site and raised that deficiency with BJC, yet BJC failed to adequately address the issue.

51. On or about April 2, 2026, an electrical fire occurred during testing activities at the Project. Upon information and belief, the incident involved multiple safety violations and further demonstrated BJC's failure to maintain adequate safety oversight, supervision, and qualified personnel on the Project.

52. BJC was informed that their staffing and resource allocation was insufficient, and Owner requested that BJC submit a Remedial Action Plan that included details on resource allocation and staffing.

53. BJC's failure to provide sufficient labor, supervision, and resources contributed directly to its inability to achieve Mechanical Completion, achieve Substantial Completion, or otherwise perform the Work in accordance with the requirements of the EPCA.

54. As a result of those failures, Williamsport and its representatives were required to undertake tasks beyond their contractual responsibilities in an effort to keep the Project progressing. Among other things, Williamsport provided direction regarding installation of low-voltage wiring at the Point of Interconnection ("POI"), assisted with POI commissioning activities, led meetings with the utility regarding scheduling and witness testing when BJC personnel failed to participate, and provided on-site quality-control support relating to wiring installation throughout the array.

55. BJC's failures constituted Contractor Events of Default under Sections 12.2(b) and 12.2(d) of the EPCA. Ex. A §§ 12.2(b), 12.2(d).

**E. BJC Failed to Comply with Required Project Administration Procedures.**

56. The EPCA imposed detailed project administration, scheduling, and reporting obligations on BJC. Ex. A § 4.2.

57. Among other requirements, BJC was required to maintain a detailed CPM Schedule, provide monthly progress reports, submit updated schedules, provide daily construction reports, and furnish remedial action plans whenever project milestones fell behind schedule. Ex. A § 4.2.

58. Despite those requirements, Williamsport repeatedly identified deficiencies in BJC's reporting obligations and project administration.

59. Williamsport repeatedly identified deficiencies in BJC's project administration, reporting, scheduling, and recovery efforts throughout the Project. Among other things, BJC failed to maintain accurate schedules, failed to provide adequate reporting concerning Project status, and failed to provide a credible path to Mechanical Completion or Substantial Completion.

60. BJC repeatedly failed to provide required Monthly Progress Reports, failed to provide complete and accurate schedule information, and failed to provide adequate supporting information required by Section 4.2 of the EPCA.

61. On or about November 21, 2025, Williamsport issued a formal Notice and Request for Remedial Action Plan pursuant to Section 4.2 of the EPCA after determining that BJC had fallen materially behind schedule. Despite that request, BJC failed to provide a satisfactory recovery plan capable of returning the Project to compliance with the Project Schedule.

62. Even after receipt of the Remedial Action Plan request and repeated communications from Williamsport regarding schedule recovery and completion planning, BJC

failed to provide a viable plan to achieve Mechanical Completion or Substantial Completion and instead continued to fall further behind schedule.

63. These failures materially impaired Williamsport's ability to evaluate Project status, completion risks, schedule recovery efforts, and the likelihood of timely Project completion.

**F. BJC Failed to Submit Proper Payment Applications and Lien Waivers.**

64. Section 5.4(a) of the EPCA required BJC to submit properly completed applications for payment together with supporting documentation, conditional lien waivers, unconditional lien releases, and other required backup materials. Ex. A § 5.4(a).

65. BJC failed to provide complete and conforming payment applications as required by the EPCA.

66. Multiple payment applications lacked required lien waiver packages and other supporting documentation required by the EPCA.

67. Williamsport repeatedly notified BJC of those payment application deficiencies. For example, Owner communicated such deficiencies in writing, including, but not limited to, requests and notices sent on October 21, 2025, November 12, 2025, December 15, 2025, January 9, 2026, January 12, 2026, February 13, 2026, February 20, 2026, February 25, 2026, March 17, 2026, and April 3, 2026.

68. Those communications identified deficiencies including missing conditional and unconditional lien waivers, incomplete supporting documentation, and other information required by Section 5.4(a) of the EPCA.

69. Despite repeated notice of these deficiencies, BJC failed to provide complete and conforming payment applications, lien waiver packages, and supporting documentation as required by the EPCA.

70. As a result, numerous payment applications were never properly completed by BJC as required by the EPCA, resulting in their rejection, non-acceptance, and withholding in accordance with the terms of the EPCA. Williamsport expressly disputed BJC's entitlement to payment under such applications and consistently maintained that the applications failed to satisfy the requirements of Section 5.4(a) of the EPCA.

**G. BJC Failed to Comply with Contractual Notice Procedures.**

71. The EPCA established mandatory notice procedures governing any claimed Excusable Events, scheduled extensions, delay claims, Change Order requests. Ex. A §§ 6.5, 7.3(a).

72. Section 6.5 required BJC to provide written notice of any claimed Excusable Event within five (5) business days thereafter. Ex. A §§ 6.5, 7.3(a).

73. Section 7.3(a) further provides that a failure to comply with the required Change Order Procedures "shall constitute a waiver of Contractor's rights to such Change Order." Ex. A § 7.3(a).

74. Although BJC later attempted to justify its performance failures through claims of Excusable Events, including alleged Williamsport-caused delays, permit-related delays, differing site conditions, and requests for additional compensation, such claims are without merit and did not entitle BJC to relief under the EPCA.

75. For example, BJC did not issue its formal Notice of Continuing Delay until December 17, 2025, despite the underlying permit-related events having purportedly occurred in July 2025. As a result, BJC's notice was issued approximately five months after the events giving rise to the claim and far outside the notice periods required by the EPCA.

76. BJC also sought additional schedule relief and compensation arising from alleged subsurface rock conditions and pile-related impacts. However, the contemporaneous record demonstrates that such conditions were known long before the claims ultimately asserted by BJC. For example, in RFI No. 23 dated August 26, 2025, BJC specifically raised issues relating to rock conditions, and on September 2, 2025, BJC was advised by the geotechnical engineer that shallow limestone existed across the site and posed installation risks.

77. Further, the parties executed Change Order No. 1, which provided schedule relief and compensation relating to the alleged subsurface conditions associated with the pre-drilling work. BJC later attempted to seek additional compensation and schedule relief arising from the same conditions despite having expressly waived any entitlement to further relief and agreeing that Change Order No. 1 constituted full compensation and schedule relief for those conditions.

78. On or about July 21, 2026, BJC submitted Change Order No. 4 seeking approximately $7,000,000 in additional compensation and schedule relief arising from alleged delays and impacts that BJC contends began in October and November 2025 and continued thereafter.

79. Williamsport rejected Change Order No. 4, because, among other reasons, BJC failed to comply with the EPCA's mandatory notice and Change Order procedures. Specifically, Williamsport advised BJC that Change Order No. 4 sought recovery for alleged impacts dating back to October and November 2025, over two hundred and fifty (250) days after such impacts allegedly arose, and well outside the period in which BJC could have properly sought relief under the EPCA.

80. The Project record further demonstrates substantial Contractor-caused delays that predated and ran concurrently with any alleged Excusable Event. As a result, and pursuant to

Section 6.6 of the EPCA, BJC was not entitled to the schedule extensions, compensation, Change Orders, or other relief it later claimed, including Change Order No. 4.

81. By failing to comply with the EPCA's mandatory notice and Change Order procedures, BJC waived any contractual entitlement to the schedule relief, compensation, Change Orders, or other adjustments sought through a Request for Equitable Adjustment ("REA"), Change Order No. 4, or other related claims and may not rely upon those claims to excuse its delays or failures to achieve Mechanical Completion or Substantial Completion. Ex. A §§ 6.5, 7.3(a).

**H. BJC Filed Mechanic's Lien Claims That Further Harmed the Project.**

82. On or about April 24, 2026, BJC improperly filed a mechanics' lien Claim in the Court of Common Pleas of Franklin County, Pennsylvania in the amount of approximately $3,150,222.79 (the "First Mechanics' Lien").

83. BJC filed the First Mechanics' Lien despite the existence of ongoing disputes concerning payment entitlement, Delay Liquidated Damages, Contractor Events of Default, completion status, and other offsets available to Williamsport under the EPCA.

84. Additionally, the First Mechanics' Lien failed to provide any substantiation for the claimed amount.

85. Indeed, BJC did not include any evidence of, or documentation relating to, the work allegedly performed or costs incurred by BJC.

86. The First Mechanics' Lien encumbered title to the Project property and further impaired Williamsport's ability to finance, refinance, and complete the Project.

87. The filing of the First Mechanics' Lien also prevented satisfaction of the requirements for Substantial Completion under the EPCA, which requires that BJC not take or allow any action to occur that prevents title from transferring to Williamsport. Ex. A § 4.5(b)(xvi).

88. Following the filing of the First Mechanics' Lien, Williamsport incurred significant additional costs and expenses associated with obtaining substitute security and discharging the lien from the Project property.

89. In connection with the First Mechanics' Lien proceedings, Williamsport posted substitute security and obtained the discharge of the First Mechanics' Lien from the Project property.

90. On or about July 28, 2026, BJC improperly filed a second mechanics' lien Claim in the Court of Common Pleas of Franklin County, Pennsylvania in the amount of approximately $11,436,129.00 (the "Second Mechanics' Lien").

91. The Second Mechanics' Lien suffered from the same defects as the First Mechanics' line—namely the fact that it ignored BJC's contractual obligations and disputes related thereto and contained no evidence or documentation substantiating the amount claimed.

92. Upon information and belief, the Second Mechanics' Lien includes amounts arising from the same Project and relating to categories of damages, costs, and compensation previously asserted by BJC in the First Mechanics' Lien and disputed by Williamsport.

93. Further, beyond overlap with amounts asserted in the First Mechanics' Lien, the amount asserted in the Second Mechanics' Lien substantially exceeded the amount asserted in the First Mechanics' Lien. Upon information and belief, approximately $7,000,000 of the amount asserted in the Second Mechanics' Lien arises from claims previously asserted by BJC in Change Order No. 4 seeking compensation and schedule relief for alleged delays dating back to October and November 2025, which Williamsport repeatedly rejected as untimely and barred by the EPCA's notice and Change Order requirements. Such claims further relate to conditions and

impacts for which BJC previously accepted compensation and schedule relief through Change Order No. 1 expressly waiving any entitlement to additional relief.

94. The excessive and unsupported amount claimed by BJC in the Second Mechanics' Lien has absolutely no basis in the actual work conducted on the Project and appears intended to impede the completion and/or refinancing of the Project.

95. Despite the posting of substitute security and the discharge proceedings relating to the First Mechanics' Lien, BJC continued to pursue lien-related remedies against the Project, including by filing the Second Mechanics' Lien.

96. The Second Mechanics' Lien has further impaired title to the Project property and has substantially impaired Williamsport's ability to obtain financing, complete the Project, and otherwise move the Project toward Mechanical Completion and Substantial Completion.

97. The Second Mechanics' Lien was filed against a Project that BJC itself failed to bring to Mechanical Completion or Substantial Completion and for which substantial Work remained incomplete. The size and scope of the Second Mechanics' Lien have substantially increased Williamsport's costs, complicated efforts to complete the Project, and further impaired Williamsport's ability to transition the Project to replacement contractors and secure the financing necessary to complete the Work.

98. As a result of BJC's actions, Williamsport has incurred and continues to incur damages arising from the filing of the First Mechanics' Lien and the Second Mechanics' Lien, including financing-related impacts, legal fees and expenses, costs associated with discharge of the liens, and other damages to be determined at trial. The First Mechanics' Lien and Second Mechanics' Lien further impaired Williamsport's ability to obtain or maintain Project financing and increased the costs associated with Project completion and administration.

99. On or about August 8, 2026, BJC filed a Praecipe to Discontinue Without Prejudice the action relating to the First Mechanics' Lien. As of the date of this filing, however, the First Mechanics' Lien proceedings remain relevant to the claims and damages asserted herein, including the costs incurred by Williamsport in bonding off and discharging the lien.

**I. Williamsport Provided Notice and Opportunity to Cure.**

100. Despite BJC's repeated failures, Williamsport made substantial efforts to facilitate completion of the Project.

101. Through communications between Williamsport and BJC management, Williamsport repeatedly requested substantiation for claimed delays, requested recovery plans, sought corrective action, and provided BJC with multiple opportunities to bring the Project back into compliance with the EPCA.

102. Williamsport participated in management-level negotiations pursuant to Section 16.3 (a) of the EPCA in an effort to resolve the parties' disputes and permit completion of the Project.

103. When those efforts proved unsuccessful, Williamsport issued its Notice of Continuing Default dated June 8, 2026. Ex. C.

104. The Notice of Continuing Default expressly identified BJC's continuing defaults, Contractor events of Default, and general failures to comply with the EPCA.

105. The Notice of Continuing Default specifically identified BJC's failure to achieve Mechanical Completion, failure to achieve Substantial Completion, failure to diligently prosecute the Work, failure to furnish sufficient labor and resources, failure to comply with Project Schedule requirements, failure to satisfy project administration and reporting requirements, failure to

provide proper payment applications and lien waiver requirements, failure to comply with contractual notice procedures, and failure to cure ongoing defaults.

106. The Notice of Continuing Default further advised BJC that it remained approximately 186 days past the Guaranteed Mechanical Completion Date and approximately 156 days past the Guaranteed Substantial Completion Date, that Delay Liquidated Damages had reached the contractual cap under the EPCA, and that Williamsport was exercising its contractual rights to withhold payment. Ex. B.

107. The Notice of Continuing Default demanded cure of the identified defaults and afforded BJC an opportunity to correct the continuing Contractor Events of Default.

108. BJC failed to cure the defaults identified in the Notice of Continuing Default within the time provided by the EPCA.

109. The EPCA required BJC to diligently carry on the Work notwithstanding disputes concerning Change Orders, compensation, or other issues so long as all undisputed amounts payable to BJC had been paid. Ex. A § 4.11.

110. Following issuance of the Notice of Continuing Default, BJC failed to provide a credible plan to achieve Mechanical Completion or Substantial Completion and failed to take adequate steps to return the Project to compliance with the EPCA.

111. BJC did not complete any additional substantive Work on the Project following the June 8, 2026 Notice of Continuing Default. Ex. C.

112. During June and July 2026, while BJC maintained custody, care, and control of the Project, the facility was subject to a curtailment imposed by PJM, the regional grid operator, limiting output to approximately 5 megawatts (“MW”). When the curtailment was lifted and the Project was permitted to operate at its normal capacity of approximately 20 MW, Williamsport

repeatedly notified BJC and directed BJC to remove the curtailment restriction. Despite those notifications, BJC refused to timely remove the curtailment, causing the Project to continue operating below its normal capacity for an extended period.

113. Despite substantively ceasing Work, and despite continuing to maintain control over Project information, subcontractor relationships, and completion activities (known as care, custody, and control or "CCC"), BJC failed to take action necessary to cure deficiencies, complete the Project, or permit Williamsport to do so.

114. As a result of BJC's failure to cure, Williamsport exercised its contractual rights under Article 12 of the EPCA and issued a Notice of Termination for Cause dated July 7, 2026. Ex. D.

115. In the Notice of Termination, Williamsport expressly invoked Section 12.4(a) of the EPCA and terminated in the Agreement for cause based upon BJC continuing Contractor Events of Default and failure to cure.

**J. BJC Failed to Properly Transition the Project Following Termination.**

116. Following issuance of the Notice of Termination, BJC acknowledged receipt of the termination and represented that it would cooperate in an orderly transition of the Project.

117. The Notice of Termination expressly directed BJC to, among other things, provide subcontractor information, contracts, schedules, project records, procurement information, warranty materials, vendor information, and other documents necessary for Williamsport to complete the Project. Ex. D.

118. The Notice of Termination further invoked Williamsport's rights under Section 12.4(c) of the EPCA, which requires BJC, upon termination, to assign requested subcontracts,

purchase orders, and permits and to deliver all information and documents reasonably necessary to permit Williamsport to complete or cause completion of the Work. Ex. A § 12.4(c); Ex. D.

119. These transition obligations are both triggered by and survive BJC's termination from the Project.

120. Despite those obligations, and despite BJC's representations that it would cooperate in the transition, BJC failed to promptly provide all information necessary for Williamsport to assume responsibility for and complete the remaining Work or otherwise transfer custody, care, and control of the Project to Williamsport.

121. Leading up to and at the time of termination, Williamsport repeatedly requested project information, subcontractor information, vendor information, project records, schedules, procurement records, warranty information, and other materials necessary to allow Williamsport and its replacement contractors to evaluate Project status and complete the remaining Work.

122. Despite those requests, BJC did not promptly provide all such information and materials. BJC's failure to promptly provide such information delayed Williamsport's efforts to evaluate the status of the Project, secure replacement contractors, coordinate with subcontractors and vendors, and complete the remaining Work.

123. In addition, BJC failed to promptly transfer possession and control of Project information, records, and materials necessary for Williamsport to effectively and efficiently manage and complete the Project following termination.

124. As a result, Williamsport was required to expend additional time, money, and resources investigating Project status, identifying subcontractors and vendors, obtaining project information, preserving the Work, and arranging completion of the Project.

125. As a direct result of BJC's actions, Williamsport has incurred and continues to incur increased project administration costs, transition costs, consultant expenses, replacement contractor costs, delay damages, and Completion Costs.

**COUNT I**
**BREACH OF CONTRACT**
**Failure to Timely Achieve Mechanical Completion**

126. Williamsport incorporates by references the allegations contained in Paragraphs 1 through 125 as though fully set forth herein.

127. The EPCA constitutes a valid and enforceable contract between Williamsport and BJC.

128. Williamsport performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

129. BJC materially breached the EPCA.

130. Sections 4.1(b) and 4.3 of the EPCA required BJC to achieve Mechanical Completion by December 1, 2025.

131. BJC failed to achieve Mechanical Completion by December 1, 2025 and, despite later submitting a Mechanical Completion Certificate on or about March 23, 2026, failed to satisfy the contractual requirements for Mechanical Completion. Williamsport timely identified multiple deficiencies precluding Mechanical Completion, which deficiencies remained uncured.

132. BJC therefore failed to timely achieve Mechanical Completion as required by the EPCA.

133. BJC's failure to timely achieve Mechanical Completion, together with its continued inability to satisfy the requirements for Mechanical Completion and the resulting Delay Liquidated

Damages, constituted a material breach of the EPCA and a Contractor Event of Default under Section 12.2(e).

134. As a direct and proximate result of BJC's breach, Williamsport suffered Delay Liquidated Damages and other direct damages recoverable under the EPCA.

135. Williamsport is entitled to recover all damages available under the EPCA and applicable law.

**COUNT II**
**BREACH OF CONTRACT**
**Failure to Timely Achieve Substantial Completion**

136. Williamsport incorporates by references the allegations contained in Paragraphs 1 through 135 as though fully set forth herein.

137. The EPCA constitutes a valid and enforceable contract between Williamsport and BJC.

138. Williamsport performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

139. Sections 4.1(b) and 4.5 of the EPCA required BJC to achieve Substantial Completion by December 22, 2025.

140. BJC failed to satisfy the contractual prerequisites to Substantial Completion and left numerous punch-list items, closeout items, and other Work incomplete.

141. BJC further failed to satisfy multiple conditions precedent to Substantial Completion set forth in Section 4.5(b) of the EPCA, including conditions relating to Mechanical Completion, testing, commissioning, completion of the Work, lien waivers, and the absence of Contractor Events of Default.

142. BJC therefore failed to timely achieve Substantial Completion as required by the EPCA.

143. BJC's failure to timely achieve Substantial Completion constituted a material breach of the EPCA and a Contractor Event of Default under Section 12.2(f).

144. As a direct and proximate result of BJC's breach, Williamsport suffered Delay Liquidated Damages, Completion Costs, and other direct damages recoverable under the EPCA.

145. Williamsport is entitled to recover all damages available under the EPCA and applicable law.

**COUNT III**
**BREACH OF CONTRACT**
**Failure to Diligently Prosecute and Complete the Work**

146. Williamsport incorporates by references the allegations contained in Paragraphs 1 through 145 as though fully set forth herein.

147. The EPCA constitutes a valid and enforceable contract between Williamsport and BJC.

148. Williamsport performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

149. The EPCA required BJC to diligently, duly, and properly perform and complete the Work and to perform the Work in accordance with the Project Schedule and the Guaranteed Completion Dates. Ex. A §§ 2.1, 4.1(b), 4.1(c).

150. Further, BJC was obligated to continue diligently performing the Work notwithstanding ongoing contractual disputes pursuant to Section 4.11 of the EPCA.

151. BJC failed to diligently prosecute and complete the Work, including by repeatedly missing critical project milestones, falling behind the Project Schedule, failing to timely complete

design, procurement, construction, testing, and commissioning activities, failing to implement adequate recovery efforts, and otherwise failing to complete the Work necessary to achieve Mechanical Completion and Substantial Completion.

152. BJC further failed to provide a credible path to Project completion despite repeated requests from Williamsport and repeated opportunities to cure its performance deficiencies.

153. BJC's failure to diligently prosecute and complete the Work constituted a material breach of the EPCA and a Contractor Event of Default under Section 12.2(b).

154. As a direct and proximate result of BJC's breach, Williamsport suffered Delay Liquidated Damages, Completion Costs, increased project administration costs, and other direct damages recoverable under the EPCA.

155. Williamsport is entitled to recover all damages available under the EPCA and applicable law.

**COUNT IV**
**BREACH OF CONTRACT**
**Failure to Provide Sufficient Labor, Equipment, and Resources**

156. Williamsport incorporates by references the allegations contained in Paragraphs 1 through 155 as though fully set forth herein.

157. The EPCA constitutes a valid and enforceable contract between Williamsport and BJC.

158. Williamsport performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

159. Section 4.1(c) of the EPCA required BJC to furnish sufficient labor forces and work such hours as necessary to assure completion of the Work in accordance with the Project Schedule and the Guaranteed Completion Dates.

160. BJC failed to provide sufficient labor, equipment, personnel, supervision, and resources necessary to prosecute and complete the Work.

161. Indeed, numerous key BJC personnel at all levels—executive, project management, and construction management—departed BJC during the course of the Project leading to continuity and quality issues, as well as requiring additional time and cost to bring replacement personnel up to speed.

162. BJC's failure to provide sufficient labor, equipment, personnel, supervision, safety oversight, and resources constituted a material breach of the EPCA and a Contractor Event of Default under Sections 12.2(b) and 12.2(d).

163. As a direct and proximate result of BJC's breach, Williamsport suffered Delay Liquidated Damages, Completion Costs, costs associated with staffing and supervision deficiencies, and other direct damages recoverable under the EPCA.

164. Williamsport is entitled to recover all damages available under the EPCA and applicable law.

**COUNT V**
**BREACH OF CONTRACT**
**<u>Failure to Comply with Project Schedule, Reporting, and Recovery Obligations</u>**

165. Williamsport incorporates by references the allegations contained in Paragraphs 1 through 164 as though fully set forth herein.

166. The EPCA constitutes a valid and enforceable contract between Williamsport and BJC.

167. Williamsport performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

168. Section 4.2 of the EPCA required BJC to comply with detailed project administration, scheduling, reporting, and recovery obligations, including maintaining and updating project schedules, providing Monthly Progress Reports, providing daily construction reports, and furnishing remedial action plans when required.

169. BJC failed to comply with the EPCA's scheduling, reporting, project administration, and recovery obligations.

170. BJC further failed to implement and comply with adequate recovery efforts and remedial action plans despite being materially behind schedule and despite Williamsport's repeated requests for information, documentation, schedule recovery measures, and a credible path to Mechanical Completion and Substantial Completion.

171. BJC's failure to comply with the Project Schedule, reporting obligations, recovery requirements, and Remedial Action Plan obligations constituted a material breach of the EPCA and a Contractor Event of Default under Sections 12.2(d) and 12.2(p).

172. As a direct and proximate result of BJC's breach, Williamsport suffered Delay Liquidated Damages, increased project administration costs, Completion Costs, and other direct damages recoverable under the EPCA.

173. Williamsport is entitled to recover all damages available under the EPCA and applicable law.

**COUNT VI**
**BREACH OF CONTRACT**
**Failure to Comply with Mandatory Notice, Claim, Payment Application, and**
**<u>Lien-Waiver Requirements</u>**

174. Williamsport incorporates by references the allegations contained in Paragraphs 1 through 173 as though fully set forth herein.

175. The EPCA constitutes a valid and enforceable contract between Williamsport and BJC.

176. Williamsport performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

177. The EPCA required BJC to comply with mandatory notice, claim, Change Order, payment application, and lien-waiver requirements. Ex. A §§ 5.4(a), 6.5, 7.3(a).

178. BJC failed to submit properly completed payment applications with all supporting documentation, conditional lien waivers, unconditional lien releases, and other required backup materials as required by Section 5.4(a) of the EPCA.

179. BJC also failed to comply with the EPCA's mandatory notice and Change Order procedures in connection with its claimed Excusable Events, alleged permit-related delays, alleged differing site conditions, requests for schedule extensions, and requests for additional compensation.

180. BJC nevertheless sought additional compensation and schedule relief through notices, claims, and a REA seeking approximately $2.44 million and additional schedule relief, despite its failure to comply with the EPCA's contractual notice, claim, and Change Order requirements.

181. BJC's failure to comply with the EPCA's mandatory notice, claim, Change Order, payment application, and lien-waiver requirements constituted a material breach of the EPCA and a Contractor Event of Default under Section 12.2(p).

182. As a direct and proximate result of BJC's breach, Williamsport suffered damages recoverable under the EPCA, including costs and damages associated with disputed payment

applications, lien-waiver deficiencies, project delay, and BJC's improper claims for additional compensation and schedule relief.

183. Williamsport is entitled to recover all damages available under the EPCA and applicable law.

**COUNT VII**
**BREACH OF CONTRACT**
**Improper Mechanics' Liens and Title Impairment**

184. Williamsport incorporates by references the allegations contained in Paragraphs 1 through 183 as though fully set forth herein.

185. The EPCA constitutes a valid and enforceable contract between Williamsport and BJC.

186. Williamsport performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

187. The EPCA required BJC to perform the Work and administer payment and lien matters in a manner that did not impair title to the Project property and did not prevent satisfaction of the contractual requirements for Substantial Completion. Ex. A § 4.5(b)(xvi).

188. BJC filed and maintained the First Mechanics' Lien and the Second Mechanics' Lien despite ongoing disputes concerning payment entitlement, Delay Liquidated Damages, Contractor Events of Default, completion status, offsets, and other defenses available to Williamsport under the EPCA.

189. BJC's filing and maintenance of the First Mechanics' Lien and Second Mechanics' Lien impaired title to the Project property, interfered with Williamsport's ability to finance, refinance, complete, and administer the Project, and substantially increased Williamsport's costs.

190. Further, BJC's filing and maintenance of the First Mechanics' Lien and the Second Mechanics' Lien constituted material breaches of the EPCA and prevented satisfaction of the contractual requirements for Substantial Completion, including Section 4.5(b)(xvi). The filing and maintenance of the First Mechanics' Lien further constituted a Contractor Event of Default under Section 12.2(s).

191. As a direct and proximate result of BJC's breach, Williamsport incurred costs associated with bonding off, discharging, and responding to the mechanics' liens, legal fees and expenses, financing-related damages, increased project administration costs, increased completion costs, and other direct damages recoverable under the EPCA.

192. The Second Mechanics' Lien, asserted in the amount of approximately $11,436,129.00, substantially exceeds the amount asserted in the First Mechanics' Lien and further impaired Williamsport's ability to obtain financing, complete the Project, engage replacement contractors, and otherwise mitigate damages resulting from BJC's breaches.

193. Although BJC subsequently filed a Praecipe to Discontinue Without Prejudice the action relating to the First Mechanics' Lien, Williamsport had already incurred substantial costs and damages associated with bonding off, discharging, and responding to the First Mechanics' Lien.

194. Williamsport is entitled to recover all damages available under the EPCA and applicable law.

**COUNT VIII**
**BREACH OF CONTRACT**
**<u>Failure to Cure Defaults Following Notice of Continuing Default</u>**

195. Williamsport incorporates by references the allegations contained in Paragraphs 1 through 194 as though fully set forth herein.

196. The EPCA constitutes a valid and enforceable contract between Williamsport and BJC.

197. Williamsport performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

198. Williamsport issued the Notice of Continuing Default dated June 8, 2026, identifying BJC's continuing defaults, Contractor Events of Default, and ongoing failures to comply with the EPCA. Ex. C.

199. The Notice of Continuing Default demanded cure of the identified defaults and afforded BJC an opportunity to cure in accordance with the EPCA.

200. BJC failed to cure the identified defaults within the time provided by the EPCA.

201. BJC's failure to cure the identified defaults constituted a material breach of the EPCA and further established Contractor Events of Default under Sections 12.2(b), 12.2(c), 12.2(d), 12.2(e), 12.2(f), 12.2(p), and 12.2(s).

202. Further, BJC's failure to continue diligently performing the Work notwithstanding ongoing disputes further constituted a material breach of Section 4.11 of the EPCA.

203. Rather than curing its defaults following the Notice of Continuing Default, BJC exacerbated its existing defaults further impaired Project operations, delayed Project completion, and increased Williamsport's costs to complete the Work.

204. Further, during June and July 2026, while maintaining custody, care, and control of the Project, BJC failed to remove a PJM curtailment after being repeatedly directed to do so by Williamsport, causing the Project to continue operating below its normal capacity, reducing Project performance, and further hindering Williamsport's ability to complete and transition the Project.

205. As a direct and proximate result of BJC's breach and failure to cure, Williamsport was entitled to terminate the EPCA for cause pursuant to Article 12 and Section 12.4(a).

206. Williamsport exercised its contractual rights and issued its Notice of Termination for Cause dated July 7, 2026.

207. As a direct and proximate result of BJC's breach, Williamsport suffered Delay Liquidated Damages, Completion Costs, costs associated with Project transition and completion, and other direct damages recoverable under the EPCA.

208. Williamsport is entitled to recover all damages available under the EPCA and applicable law.

**COUNT IX**
**BREACH OF CONTRACT**
**Post-Termination Breaches and Failure to Transfer Project Information**

209. Williamsport incorporates by references the allegations contained in Paragraphs 1 through 208 as though fully set forth herein.

210. The EPCA constitutes a valid and enforceable contract between Williamsport and BJC.

211. Williamsport performed all obligations required of it under the EPCA or such obligations were excused, waived, or otherwise satisfied.

212. Following Williamsport's termination of the EPCA for cause, Section 12.4(c) required BJC, upon Williamsport's request, to withdraw from the Site, assign requested subcontracts, purchase orders, and permits, and deliver and make available all information, drawings, specifications, documents, licenses, administration materials, and other information reasonably related to the Work and reasonably necessary to permit Williamsport to complete, or cause the completion of, the Work.

213. Section 12.4(c) further authorized Williamsport to take all actions necessary to complete the Work, including employing other persons or entities to finish the Work by whatever method Williamsport may deem expedient.

214. Despite BJC's contractual post-termination obligations, and despite BJC's representation that it would cooperate in an orderly transition, BJC failed to promptly provide Project information, subcontractor information, vendor information, schedules, procurement records, warranty information, project documentation, and other materials necessary for Williamsport and its replacement contractors to evaluate Project status and complete the remaining Work.

215. BJC further failed to promptly transfer possession and control of Project information, records, materials, and completion-related information necessary for Williamsport to effectively manage, transition, and complete the Project.

216. Importantly, these contractual obligations are both triggered by and survive BJC's termination from the Project.

217. BJC's post-termination failures constituted material breaches of the EPCA, including, but not limited to, Section 12.4(c), and deprived Williamsport of information, materials, and contract rights necessary to efficiently complete the Project and mitigate its damages.

218. As a direct and proximate result of BJC's post-termination breaches, Williamsport has incurred and continues to incur transition costs, consultant expenses, replacement contractor costs, project administration costs, delay damages, Completion Costs, costs associated with obtaining and organizing Project information, and other direct damages recoverable under the EPCA.

219. Williamsport is entitled to recover all damages available under the EPCA and applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FR-Williamsport LLC respectfully requests that this Court enter judgment in its favor and against Defendant Boyd Jones Construction Company and award:

A. Compensatory damages in an amount to be determined at trial;

B. Completion Costs recoverable under Section 12.4(c) of the EPCA;

C. Delay damages and other contract damages recoverable under the EPCA;

D. A declaration that Williamsport has fulfilled all of its obligations under the EPCA;

E. Pre-judgment interest;

F. Post-judgment interest;

G. Costs of suit;

H. Attorneys' fees; and

I. Such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**.

Respectfully submitted,

*/s/ Kevin C. Meacham*

Kevin C. Meacham (PA ID 208152)
Cara L. Brack (PA ID 330369)

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
One PPG Place Suite 3200
Pittsburgh, PA 15222
(412) 730-4050 (Telephone)

(412) 567-9241 (Fax)
Kevin.meacham@nelsonmullins.com
Cara.brack@nelsonmullins.com

*Counsel for Plaintiff FR-Williamsport, LLC*