# EXHIBIT C

BIRCH CREEK

VIA EMAIL, DELIVERY RECEIPT REQUESTED

June 8, 2026

Boyd Jones Construction Company
950 S. 10th St., Ste 100
St. Louis, MO 36103
Attn: Andrew Crane
Email: acrane@boydjones.biz

FR – Williamsport, LLC
c/o Birch Creek Energy
2650 Locust Street, Suite 100
St. Louis, Missouri 63103

**RE: Solar Project Engineering, Procurement and Construction Agreement**
**Williamsport Solar Project - Notice of Continuing Default**

Dear Mr. Crane,

Reference is made to Solar Project Engineering, Procurement and Construction Agreement by and between FR-Williamsport, LLC ("Owner") and Boyd Jones Construction Company ("Contractor") dated April 4, 2025 ("Agreement" or "EPCA"). All terms not otherwise defined herein shall have the meaning set forth in the Agreement.

Contractor filed a Mechanic's Lien in the Court of Common Pleas of Franklin County, Pennsylvania at Case No. 2026-01567 in the amount of $3,150,222.79, asserting entitlement to payment for work, equipment, and materials furnished on the Project. Owner has properly exercised its broad rights to withhold payment under the Agreement due to Contractor's continuing defaults, failure to prosecute the Work in conformance with the Agreement. Because of the continuing defaults, incomplete work on the project, and the incurrence of damages, including damages that exceed Delay Liquid Damages limit, Contractor is not entitled to any payment, including the amount Contractor claims it is owed in its improperly filed Mechanic's Lien.

## I. Contractor Owes Liquidated Damages Due to Contractor's Delay.

Pursuant to Section 4.8 of the Agreement, Owner is entitled to assess liquidated damages where Contractor fails to meet Mechanical Completion or Substantial Completion by the applicable Guaranteed Mechanical Completion Date or Guaranteed Substantial Completion Date, with such damages accruing on a daily basis until the applicable milestone is achieved. For delays in achieving Mechanical Completion, Delay Liquidated Damages are calculated at a rate of $750 per MWac per day, multiplied by the Project's MWac capacity. For delays in achieving Substantial Completion, liquidated damages are calculated at (i) $1,000 per

BIRCH CREEK

MWac per day for the first thirty (30) days of delay, and (ii) $1,500 per MWac per day thereafter, in each case multiplied by the project's MWac capacity until Substantial Completion is reached. Notwithstanding the foregoing, the Agreement expressly provides that such Delay Liquidated Damages are payable on a rolling basis beginning on the thirtieth (30th) day after the applicable Guaranteed Completion Date and continuing every thirty (30) days thereafter, and further authorizes Owner, at its option, to deduct or set off accrued Liquidated Damages against any progress payments or other amounts otherwise due to Contractor.

Contractor failed to achieve Mechanical Completion by the Guaranteed Mechanical Completion date of December 1, 2025, as modified by Change Order #1. *See* ECPA §§ 4.1(b), 4.3. Further, Contractor failed to achieve Substantial Completion by the Guaranteed Substantial Completion Date of December 22, 2025. *See* ECPA §§ 4.1(b), 4.5. As of the date of this notice, Contractor has not met either the Mechanical Completion or the Substantial Completion criteria. As of this writing, the Project remains substantially past both the Guaranteed Mechanical Completion Date and the Guaranteed Substantial Completion Date—186 days past the Guaranteed Mechanical Completion Date and 156 days past the Guaranteed Substantial Completion Date. Contractor's actions continue to impede the Project's progress toward Mechanical and/or Substantial Completion.

On April 30, 2026, Owner provided formal notice of withholding under Section 5.4(c). In that letter, Owner advised Contractor that it was exercising its rights under Section 5.4(c) and stated that, as of that date, Mechanical Completion was more than 150 days past due, and Substantial Completion was 129 days past due. Owner further advised that, based on the delay rates set forth in the Agreement, Delay Liquidated Damages incurred by the Owner had already reached the contractual cap of ten percent (10%) of the Contract Price, or $1,976,191.20, and that Owner therefore intended to withhold the entirety of Contractor's 2026 applications for payment. *See* [1] §§ 4.8(a), 5.4(c), 9.2.▯ Currently, Owner has exercised its rights under § 5.4(c) to withhold approximately $2,140,107.59on account of such Delay Liquidated Damages and other continuing defaults, and reserves the right to continue withholding amounts as may be appropriate under the ECPA. Alternatively, Contractor must pay all Delay Liquidated Damages in full to owner prior to Mechanical and Substantial Completion. *See* ECPA §§ 4.3(b)(vi), 4.5(b)(xiii), 4.8. Owner disputes any assertion that additional amounts are presently due to Contractor, including those asserted as owed in the Mechanic's Lien, and reserves all rights with respect to the proper accounting and allocation of such amounts and the ability to seek all legal and equitable remedies available to Owner regarding the same.[2]

## II. Contractor's Continuing Defaults and Failure to Prosecute Work on a Good Faith Basis.

Section 5.4(c) of the Agreement independently provides Owner with broad rights to withhold,

---

[1] In that April 30, 2026 correspondence, Owner also formally invoked Section 16.3 and requested management negotiations within five (5) Business Days, further evidencing Owner's efforts to resolve the parties' dispute while Contractor remained in continuing default.

[2] The filing of the Mechanic's Lien claim has clouded title to the Williamsport Solar Project and materially damaged Owner's efforts relating to project financing. Additionally, Contractor's filing of the liens preclude the achievement of either Mechanical or Substantial Completion.

deduct, or set off payments otherwise due to Contractor where reasonably necessary to protect Owner from loss or to recover amounts to which it is entitled under the Agreement. This includes the right to withhold payment during any continuing Contractor default, as well as for amounts arising from overpayments, third-party claims, defective or incomplete work, disputed sums, and any other amounts recoverable by Owner under the Agreement. Contractor has committed and failed to cure numerous continuing defaults including, *inter alia*:

- Contractor's failure to timely achieve Mechanical Completion in violation of EPCA §§ 4.1, 4.3, 12.2(e).
- Contractor's failure to timely achieve Substantial Completion in violation of EPCA §§ 4.1(b), 4.5, and 12.2(f).
- Contractor's failure to prosecute the work and comply with the Project Schedule and related reporting and recovery obligations in violation of EPCA §§ 4.1(c), 4.2, 12.2(b) and (d).
- Contractor's failure to comply with proper project administration requirements in violation of EPCA § 4.2.
- Contractor's failure to comply with the Agreement's mandatory notice and claims procedures in violation of EPCA § 5.4(a).
- Contractor's failure to comply with proper notice requirements in violation of EPCA § 6.5.
- Contractor's failure to cure deficiencies constituting Contractor Events of Default. *See*, *e.g.*, Agreement, §§ 12.2(b), 12.2(c), 12.2(d), 12.2(e), 12.2(f), 12.2(s).

Contractor's defaults are ongoing, remain uncured, and are causing Owner immediate and ongoing harm.

**1. Contractor's Failure to Meet Project Deadlines.**

***a. Failure to Timely Achieve Mechanical and Substantial Completion.***

Contractor is required, on a fixed-price turnkey basis, to "diligently, duly and properly perform and complete the Work" and to "achieve the Key Project Milestones by the Key Dates, Mechanical Completion Date, and Substantial Completion by the Guaranteed Substantial Completion Date." Contractor is also required to comply with the Project Schedule and to achieve Mechanical Completion and Substantial Completion by the Guaranteed Dates. *See* §§ 2.1, 4.1(b), 4.1(c). Contractor has failed to meet the minimum standards therein.

As noted above, Contractor failed to meet both the Guaranteed Mechanical Completion Date and the Guaranteed Substantial Completion Date. Contractor missed the Mechanical Completion deadlines due to its own inability to prosecute the work, including, but not limited to, the failure to adequately staff the Project with appropriately qualified personnel. This includes significant missed and delayed design, procurement, and construction activities on Contractor's behalf. Contractor's own contemporaneous schedule and reporting establish that the Project was substantially behind schedule shortly after the Notice to Proceed, with systemic delays across critical path activities attributable to delayed mobilization,

BIRCH CREEK

procurement failures, and inadequate staffing. These delays predated any alleged Excusable Event asserted by Contractor and demonstrate Contractor's inability to properly and diligently prosecute the Work from commencement of the Project.

Notwithstanding the execution of Change Order #1—which provided a full and final adjustment to the Guaranteed Mechanical Completion Date and Guaranteed Substantial Completion Date—Contractor has achieved neither Mechanical nor Substantial Completion, now more than five months beyond the extended deadline. As of the end of 2025, Contractor had no credible path to completion, failed to achieve energization, and was unable to deliver a workable completion plan. By way of example, Contractor's August 2025 progress reporting reflected approximately 28–43 days of delay across all major workstreams—just weeks after the Notice to Proceed—well before Contractor raised any claim of differing site conditions or other Excusable Events.

On or about March 23, 2026, Contractor submitted a Mechanical Completion Certificate asserting that Mechanical Completion had been achieved. This submission occurred approximately 112 days after both the original Guaranteed Mechanical Completion Date as extended by Change Order #1.

Owner timely responded within the contractual review period, providing written notice on March 25 and March 31, 2026, identifying deficiencies preventing the achievement of Mechanical Completion. Owner subsequently provided follow-up communications on April 3 and April 7, 2026. Those communications identified numerous outstanding and material deficiencies, including incomplete work in Block 6, outstanding commissioning documentation, unresolved permitting items, and incomplete closeout materials, all of which independently and collectively precluded Mechanical Completion under the Agreement.

Contractor's assertion of Mechanical Completion was improper, as material deficiencies remained and continue to remain outstanding. Owner's timely responses complied with Section 4.3(c), and Contractor's arguments to the contrary are without merit.

In addition, Contractor filed a Mechanic's Lien on the property in the Franklin County Court of Common pleas. The filing of that lien constitutes an encumbrance on title and prevents satisfaction of the conditions precedent to Substantial Completion under 4.5(b), including the requirement that Contractor must not have "taken or allowed any action to occur to prevent title from transferring to Owner[.]" *See* ECPA § 4.5(b)(xvi). The lien has further impaired Owner's ability to finance the Project and advance the Project toward completion.

Owner made repeated accommodations and expended substantial good faith efforts to facilitate Contractor's performance and completion of the Work. Those efforts included requests for substantiation of claimed impacts, implementation of tracking and recovery measures, repeated requests for completion plans, and repeated opportunities for Contractor to correct nonconforming submissions and deficient performance. Notwithstanding those efforts, Contractor failed to bring the Work into compliance with the Agreement or timely achieve the required project milestones.

Contractor's failure to achieve Mechanical or Substantial Completion within thirty (30) days of the Guaranteed Completion Date and its incurrence of Delay Liquidated Damages at the contractual cap constitute Contractor Events of Default under Sections 12.2(e) and 12.2(f). Owner expressly reserves all rights associated with such defaults.

***b. Failure to Prosecute Work and Maintain Adequate Resources.***

Contractor also failed to furnish sufficient workforce, equipment, and resources to prosecute and complete the Work. Following the failure to achieve Mechanical Completion and Substantial Completion, Contractor's workforce and site activity materially declined, including periods in which only minimal personnel were present on site while substantial punchlist and remedial work remained outstanding. Contractor's failure to maintain sufficient resources constitutes a breach of Section 4.1(c) and further demonstrates its ongoing inability to prosecute and complete the Work.

This failure is further evidenced by documented personnel turnover and staffing gaps, including the absence of a dedicated safety manager on an energized project site as of February 2026, which Owner expressly raised as a material safety deficiency and which Contractor declined to remedy. On April 2, 2026, an electrical fire occurred at Combiner Box 6-4-1 during testing activities on an energized system. That incident involved multiple NFPA 70E violations, including failure to verify de-energization and absence of required safety controls, and occurred after Owner had raised the issue of lack of safety staffing. The timing and circumstances of this incident further demonstrate Contractor's failure to maintain adequate personnel, safety oversight, and proper control over the Work. This failure to maintain adequate safety oversight and personnel also constitutes a separate breach of Section 2.27 of the Agreement, which requires Contractor to initiate, maintain, and supervise all safety precautions and programs in connection with the Work, and to take all reasonable precautions for the safety of employees, the Work, and other property potentially affected by the Work.

**2. Failure to Comply with Contractual Notice and Claims Procedures.**

Contractor has attempted to justify its performance failures through assertions of Excusable Events, including alleged Owner-caused delays and differing site conditions. These claims are without merit. Contractor failed to provide timely notice of such alleged Excusable Events as required under Section 6.5, including failing to provide notice within five (5) Business Days of becoming aware of the event. For example, Contractor did not issue its formal Notice of Continuing Delay until December 17, 2025, despite the underlying permit-related events occurring in July 2025, approximately five months earlier, rendering such claims untimely and waived.

Contractor also failed to comply with the Agreement's Change Order procedures under Article 7. Such failures constitute waiver of Contractor's claims under Section 7.3(a). Further, Change Order #1 expressly provided full and complete compensation, including schedule relief, for the alleged subsurface conditions associated with pre-drilling. Contractor waived any further entitlement arising from those conditions and cannot now seek duplicative relief. The contemporaneous record also demonstrates that

subsurface rock conditions were known to Contractor well before October 2025. In RFI No. 23 (August 26, 2025), Contractor specifically raised issues relating to rock conditions, and the geotechnical engineer advised on September 2, 2025 that shallow limestone existed across the site and posed installation risks. These communications directly contradict Contractor's later assertion that such conditions were unforeseen.

Moreover, the Project record demonstrates substantial Contractor-caused delays that predate and run concurrently with any alleged Excusable Event. Under Section 6.6, such concurrent delays bar any entitlement to schedule relief. Accordingly, Contractor has no contractual basis to excuse its delays or avoid liability for its failure to achieve Mechanical Completion and Substantial Completion.

**3. Contractor's Failure to Comply with Proper Project Administration Requirements.**

Contractor has failed to comply with its obligations under Section 4.2 to provide complete, accurate, and timely reporting, including schedules, progress reports, and recovery plans. Owner issued a formal request for a Remedial Action Plan in November 2025 due to Contractor's failure to meet Project milestones. Contractor failed to provide a satisfactory plan to return the Project to schedule and has continued to perform without a credible path to completion. Contractor's December 2025 response to Owner's Remedial Action Plan request was conditional, incomplete, and expressly disputed Owner's authority to require such plan, rather than providing a viable path to cure delay, further evidencing Contractor's failure to comply with its contractual obligations under Section 4.2.

**4. Contractor's Failure to Provide Properly Completed Application for Payments with Conforming Lien Waivers.**

In addition to Contractor's various failures, Contractor's payment support and lien waiver submissions were deficient. Section 5.4(a) required Contractor to submit, with each application for payment, supporting documentation, conditional progress lien waivers, unconditional progress lien releases for prior payments, and all other required backup. Contractor failed to provide complete and conforming payment applications, including lien waiver packages and related supporting materials for multiple payment applications. Owner communicated those deficiencies in writing, including, but not limited to, by requests on October 21, 2025, November 12, 2025, December 15, 2025, January 9th, 2026, January 12, 2026, February 13, 2026, February 20, 2026, February 25, 2026, March 17, April 3rd, 2026 thus those pay applications (and numerous others) were never "properly completed" or deemed accepted. *See* ECPA §§ 5.4(a), 5.4(c), 5.8.

**5. Failure to Cure Deficiencies Despite Notice.**

Contractor's defaults have caused Owner to incur damages in excess of the contractual cap on Delay Liquidated Damages, which are increasing daily. As Contractor is aware, in May 2026, Owner in good faith attempted to find a workable resolution to the various defaults out lined in this Notice by holding Management Negotiations pursuant to Section 16.3(a) of the Agreement. Despite Owner's efforts, Contractor rejected all workable paths forward. As such, Owner hereby reiterates its intention to withhold payment for the Delay Liquidated Damages as well as to protect itself during Contractor's continuing default.

BIRCH CREEK

Owner also demands cure of all other defaults within fifteen (15) days, as well as the timely completion of the Project.

Nothing contained in this letter shall be deemed or construed as a waiver of any default, whether known or unknown, or of any right or remedy available to Owner under the Agreement or applicable law. Owner expressly reserves all rights and remedies arising out of Contractor's defaults, including, without limitation, the right to recover Liquidated Damages, direct damages, Completion Costs, and to withhold, deduct, and set off amounts pursuant to the Agreement. Nor shall be deemed an election of remedies or a limitation on Owner's ability to pursue any additional or alternative remedies, whether under the Agreement or at law or in equity, including in connection with Contractor's payment claims, asserted lien rights, or any proceeding arising out of the Project.

We trust you appreciate the urgency of this letter and look forward to your prompt response. Please contact me with any questions or concerns regarding these issues.

Sincerely,

FR—Williamsport, LLC

Dan Siegel

cc: VIA EMAIL

siegel@birchcreekdev.com
witsken@birchcreekdev.com
hylton@birchcreekdev.com
huntley@birchcreekdev.com
legal@birchcreekdev.com